No. 21-2845

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

---

STEPHEN JOHN KARES,

*Petitioner-Appellant,*

*v.*

BRYAN MORRISON,

*Respondent-Appellee.*

---

Appeal from the United States District Court
for the Western District of Michigan
Case No. 2:19-cv-00007
The Honorable Hala Y. Jarbou

---

## PETITION FOR REHEARING

---

Easha Anand
RODERICK & SOLANGE
MACARTHUR JUSTICE CENTER
2443 Fillmore St., #380-15875
San Francisco, CA 94115

Brendan Bernicker
RODERICK & SOLANGE MACARTHUR
JUSTICE CENTER
501 H Street NE, Suite 275
Washington, DC 20002
(202) 869-4324
brendan.bernicker@macarthurjustice.org

*Counsel for Petitioner-Appellant Stephen John Kares*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..........................................................................ii

INTRODUCTION ..................................................................................... 1

ARGUMENT ............................................................................................ 3

I.    The Court overlooked Mr. Kares's arguments that he did not procedurally default his *Alleyne* claim. ............................................. 3

II.   Mr. Kares did not procedurally default his *Alleyne* claim. ................ 5

    A.    Mr. Kares exhausted his *Alleyne* claim by presenting it to the Michigan Court of Appeals. ......................................... 5

    B.    Mr. Kares exhausted his *Alleyne* claim by raising a version of it in his Rule 6.500 motion in state court. ............. 9

CONCLUSION ....................................................................................... 16

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alleyne v. United States*,
570 U.S. 99 (2013) .......................................................................... 11, 13

*Apprendi v. New Jersey*,
530 U.S. 466 (2000) ................................................................... 13

*Castille v. Peoples*,
489 U.S. 346 (1989) ...................................................................... 5, 6, 9

*Chase v. MaCauley*,
971 F.3d 582 (6th Cir. 2020) ................................................... 16

*Halbert v. Michigan*,
545 U.S. 605 (2005) ............................................................... 7

*Johnson v. Williams*,
568 U.S. 289 (2013) ................................................................. 8

*Newton v. Million*,
349 F.3d 873 (6th Cir. 2003) ................................................ 10

*People v. Lockridge*,
849 N.W.2d 388 (Mich. Ct. App. 2014) ........................................ 11, 12

*People v. Lockridge*,
870 N.W.2d 502 (Mich. 2015) ............................................... 13

*Robinson v. Woods*,
901 F.3d 710 (6th Cir. 2018) ........................................................ 1, 16

*Smith v. Digmon*,
434 U.S. 332 (1978) ................................................................ 8

*Thompson v. Bell*,
580 F.3d 423 (6th Cir. 2009) ...................................................... 7, 9

*In re Winship,*
  397 U.S. 358 (1970) ............................................................... 11

**Statutes**

28 U.S.C. § 2254(b) .................................................................... 8

## INTRODUCTION

The District Court found, and Respondent has conceded, that Mr. Kares was sentenced in violation of the Fourteenth Amendment. *See* Opinion, RE 40, PageID.1768.[1] Had the trial court not engaged in constitutionally-impermissible fact finding, Michigan's then-mandatory sentencing guidelines would have required a sentence of between 72 and 240 months before Mr. Kares became eligible for parole—from 5 to a whopping 19 years shorter than the sentence he is currently serving. *See* Sentencing Information Report, RE 21-12, PageID.1122-23. Respondent has also conceded that, if Mr. Kares has not procedurally defaulted his claim, he is entitled to relief under *Alleyne*. *See* Oral Argument at 17:17-17:40. Unless the Court grants rehearing, Mr. Kares will continue serving his admittedly-unconstitutional sentence until at least 2037.

---

[1] *See* Oral Argument at 17:17-17:40 ("Q. Do you agree that *Alleyne* applies? If we got over the idea of procedural default, do you agree that *Alleyne* would provide Kares with relief? A. Under... Yes. We're not relitigating *Robinson*."); *see also Robinson v. Woods*, 901 F.3d 710, 717 (6th Cir. 2018) (applying AEDPA deference but concluding that Michigan courts' "conclusion that Michigan's sentencing scheme did not violate the Sixth Amendment was, therefore, 'contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States'").

This case involves two questions: whether Mr. Kares's federal habeas petition was timely, and whether Mr. Kares's *Alleyne* claim is properly before the federal courts. This Court correctly held that Mr. Kares's petition was timely, *see* 6th Cir. Dkt. 58-2 at 5-14, but decided that his *Alleyne* claim is not properly before the federal courts because there are no grounds to excuse his procedural default of that claim, *see id.* at 14-16. The Court did not, however, decide the threshold question of whether there was any procedural default that needed to be excused. As Mr. Kares explained in his briefing and at argument, he never defaulted his *Alleyne* claim so he did not need an excuse for defaulting. *See* OB 36-43.[2] Mr. Kares now respectfully petitions the Court to (1) reconsider its denial of a certificate of appealability (COA) and (2) grant rehearing and hold that Mr. Kares did not default his *Alleyne* claim.

---

[2] Throughout this petition, Mr. Kares's Opening Brief is cited as "OB," Respondent's answering brief as "AB," and the Reply Brief as "RB."

## ARGUMENT

## I.     The Court overlooked Mr. Kares's arguments that he did not procedurally default his *Alleyne* claim.

Mr. Kares's opening brief asserted that "[t]he district court was wrong to conclude that Mr. Kares's *Alleyne* claim was procedurally defaulted." OB 14. He supported that assertion with two arguments that spanned seven pages. OB 36-43. First, he explained, he had properly exhausted his *Alleyne* claim by raising it to the Michigan Court of Appeals in his application for leave to appeal the denial of his Rule 6.500 motion. OB 36-39. Second, he exhausted that claim by raising a version of it in his Rule 6.500 motion itself. OB 40-43. These arguments were separate from his claim that any procedural default that may have occurred should have been excused. OB 25-35.

Respondent declined to address any of Mr. Kares's arguments about procedural default. AB 48. In his reply brief, Mr. Kares noted that Respondent had not discussed "whether his *Alleyne* claim was procedurally defaulted." RB 17-18. He then reiterated his arguments that his "*Alleyne* claim was not actually procedurally defaulted," RB 20, both

3

because he raised it to the Michigan Court of Appeals, RB 20-23, and because he raised a version of it in his Rule 6.500 motion, RB 23-24.[3]

Throughout this litigation, then, Mr. Kares has advanced two complementary arguments: he did not procedurally default his claim but, even if he had, that default would have needed to be excused. This Court rejected the second of those arguments, and Mr. Kares accepts the Court's decision. But Mr. Kares submits that rehearing is necessary so that the Court can decide, for the first time, the threshold question of whether he actually procedurally defaulted his *Alleyne* claim.

---

[3] Similarly, at oral argument, Mr. Kares's counsel explained that the question for the Court was "whether Mr. Kares procedurally defaulted his *Alleyne* claim." Oral Argument at 1:35-1:39. He explained that Mr. Kares had not because "he raised a version of it in his Rule 6.500 motion in the Michigan trial court, and then a clearer version, citing *Alleyne* itself," to the Michigan Court of Appeals. *Id.* at 3:16-3:24. "But even if the Court believes he did default," Mr. Kares's counsel explained, "that doesn't end the inquiry. There is also the further question of whether any procedural default that may have occurred must be excused under this Court's decision in *Chase v. MacAuley*." *Id.* at 3:31-3:44.

## II.    Mr. Kares did not procedurally default his *Alleyne* claim.

Mr. Kares properly exhausted his *Alleyne* claim by (A) raising it to the Michigan Court of Appeals and (B) including a version of it in his Rule 6.500 motion. There was therefore no procedural default to excuse.

### A.    Mr. Kares exhausted his *Alleyne* claim by presenting it to the Michigan Court of Appeals.

First, it is undisputed that Mr. Kares raised his *Alleyne* claim to the Michigan Court of Appeals in his application for leave to appeal the dismissal of his Rule 6.500 motion. *See* Respondent's Answer to Petition, RE 20, PageID.303. Respondent argued below that, while Mr. Kares *raised* his *Alleyne* claim in his application for leave to appeal, the claim was "not fairly presented for purposes of exhaustion because it was presented for the first time in a procedural context where consideration on the merits was unlikely." *Id.* In support of this argument, Respondent cited *Castille v. Peoples*, 489 U.S. 346 (1989). *Id.* The district court accepted Respondent's position. *See* Opinion, RE 40, PageID.1768 (citing R&R, RE 31, PageID.1660-63).

Mr. Kares argued in his opening brief that the district court's decision was incorrect. OB 36-69. As an initial matter, this Court has expressly rejected Respondent's supposed rule that a claim is not

5

exhausted if it is "raised for the first time in 'a procedural context where consideration on the merits was unlikely.'" *See* OB 38-39. Mr. Kares directed the Court's attention to *Thompson v. Bell*, which explains that "every time a claim is presented to a state court in violation of its own procedural rule, it is 'unlikely' that the state court would consider its merits, but we nevertheless require a state court to expressly deny such a claim based on the procedural rule in order for the claim to be in procedural default." *See* OB 38-39 (quoting *Thompson v. Bell*, 580 F.3d 423, 438-39 (6th Cir. 2009)). No state court expressly denied Mr. Kares's *Alleyne* claim based on a state procedural rule.

What *Castille* actually says is that it is not "fair presentation" of a claim to raise it "for the first and only time in a procedural context in which its merits will not be considered unless 'there are special and important reasons therefor.'" 489 U.S. at 351. But an application for leave to appeal to the Michigan Court of Appeals "is 'a procedural context' in which the merits are *always* considered." OB 38. As the Supreme Court explained, "the Michigan Court of Appeals, unlike the Michigan Supreme Court, sits as an error-correction instance" and "is guided in responding to leave to appeal applications by the merits of the particular defendant's

6

claims, not by the general importance of the questions presented." *Halbert v. Michigan*, 545 U.S. 605, 617-19 (2005). Because an application for leave to appeal to the Michigan Court of Appeals is not a "procedural context in which [a claim's] merits will not be considered unless 'there are special and important reasons therefor,'" the question of whether Mr. Kares's *Alleyne* claim was fairly presented is not resolved by *Castille*'s rule.

Had the Michigan Court of Appeals explicitly decided that Mr. Kares's application for leave to appeal lacked merit because the claims in it were procedurally barred under state law, then Mr. Kares's *Alleyne* claim would have been procedurally defaulted. *See Thompson*, 580 F.3d at 438-39. But a claim is not procedurally defaulted because the state courts *could* or *should* have denied it on state procedural grounds: if the state courts did not expressly and unambiguously rely on state procedural law to bar the claim, it is not procedurally defaulted. *See* OB 38-39 (citing *Thompson*, 580 F.3d at 438-39). Because Mr. Kares squarely presented his *Alleyne* claim to the Michigan Court of Appeals and appealed the denial of that claim to the Michigan Supreme Court, and

because neither court expressly relied on state procedural law in denying relief, his claims are not procedurally defaulted.

That conclusion holds regardless of whether the Michigan Court of Appeals ignored the *Alleyne* claim or considered it and decided that it lacked merit. If the Michigan Court of Appeals ignored the claim, it is exhausted under *Smith v. Digmon*, which held that "[i]t is too obvious to merit extended discussion that whether the exhaustion requirement of 28 U.S.C. § 2254(b) has been satisfied cannot turn upon whether a state appellate court chooses to ignore in its opinion a federal constitutional claim squarely raised in petitioner's brief in the state court." 434 U.S. 332, 333 (1978). As there is no dispute that Mr. Kares squarely presented his claim to the Michigan Court of Appeals, the claim is exhausted even if that court ignored it.

The result is the same if the state courts denied the claim because it lacked merit. "When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits." *Johnson v. Williams*, 568 U.S. 289, 301 (2013). Far from rebutting that presumption, the language the Michigan Court of Appeals used in denying Mr. Kares's

8

claim is the same language it uses when it indisputably denies claims on the merits. *See* RB 21-23 (collecting cases). *Castille* makes clear that a claim is exhausted whenever the state courts "actually passed upon" its merits. 489 U.S. at 351. So even if this Court were to hold, contrary to *Halbert*, that applications for leave to appeal to the Michigan Court of Appeals are "a procedural context in which [a claim's] merits will not be considered unless 'there are special and important reasons therefor,'" *id.*, Mr. Kares's *Alleyne* claim would *still* be properly exhausted.

Pulling this all together, Mr. Kares properly exhausted his *Alleyne* claim by raising it in his application for leave to appeal to the Michigan Court of Appeals. The Michigan Court of Appeals did not "expressly deny" Mr. Kares's claim "based on [a] procedural rule." *See Thompson*, 580 F.3d at 438. The rule in *Castille* does not apply to the Michigan Court of Appeals because that court is an error-correcting court. And whether the Michigan Court of Appeals ignored Mr. Kares's claim or denied it on the merits, it is still exhausted.

### B. Mr. Kares exhausted his *Alleyne* claim by raising a version of it in his Rule 6.500 motion in state court.

Mr. Kares also exhausted his claim by raising a version of it in his Rule 6.500 motion in the state trial court. OB 40-42. Respondent argued

9

below that Mr. Kares's Rule 6.500 motion did not mention *Alleyne* and "merely asserted that his sentencing guidelines were scored based on inaccurate information," rather than "that his sentencing guidelines were improperly elevated based on judge-found facts." Respondent's Answer to Petition, RE 20, PageID.302-03. But Mr. Kares's Rule 6.500 motion explained that his sentencing enhancement for Offense Variable 11 relied on judge-found facts and argued that "[a] trial court may not make an independent finding regarding a defendant's guilt[] of another offense to justify an offense variable scoring." Motion for Relief from Judgment, RE 21-10, PageID.1020. The claim that a defendant's sentence rests on judge-found facts that increased the minimum sentence under mandatory sentencing guidelines is an *Alleyne* claim. And while Mr. Kares did not cite *Alleyne*, he was not required to do so in order to fairly present his claim.

Quoting from this Court's decision in *Newton v. Million*, Mr. Kares's opening brief explained that:

> A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented: (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing

the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.

OB 40-41 (quoting 349 F.3d 873, 877 (6th Cir. 2003)).

"Mr. Kares did all four here." OB 41. First, Mr. Kares relied on federal cases employing constitutional analysis. Like the opinion in *Alleyne*, Mr. Kares's Rule 6.500 motion cited *In re Winship*, 397 U.S. 358 (1970), the foundational case holding that due process requires proof beyond a reasonable doubt in all criminal cases. *See* OB 41; Motion for Relief from Judgment, RE 21-10, PageID.1020 (citing *Winship* for the proposition that "[t]he Fourteenth Amendment of the United States Constitution[] requires the prosecution to prove every element of a crime beyond a reasonable doubt"); *Alleyne v. United States*, 570 U.S. 99, 104 (2013) (citing *Winship* for the proposition that the Sixth Amendment, "in conjunction with the Due Process Clause, requires that each element of a crime be proved to the jury beyond a reasonable doubt").

Second, Mr. Kares cited a state case employing federal constitutional analysis. OB 41. The court below decided that Mr. Kares had not done so because the case he cited, *People v. Lockridge*, 849 N.W.2d 388 (Mich. Ct. App. 2014), "only discussed state law, not federal

11

law." Opinion, RE 40, PageID.1769. This is plainly incorrect. The page of *Lockridge* that Mr. Kares cited includes the following discussion of *Alleyne*: "[D]efendant argues that the trial court engaged in judicial factfinding, which, according to defendant, violated the new rule in *Alleyne*. This Court recently held that the decision in *Alleyne* does not implicate Michigan's sentencing scheme. This Court is bound to follow *Herron*." *Lockridge*, 849 N.W.2d at 284 (internal citation omitted).

This is not a discussion of state law. It is a discussion of whether *Alleyne*, federal law, invalidated Michigan's sentencing scheme. It is therefore a state case employing federal constitutional analysis. If there were any doubt, the nine-paragraph opinion in *Lockridge* drew two lengthy concurrences explaining, in detail, why *Herron* was wrongly decided and why the sentencing scheme under which Mr. Lockridge and Mr. Kares were sentenced violated the Sixth and Fourteenth Amendments as they were interpreted by the Supreme Court in *Alleyne*.

Third, Mr. Kares phrased his claim in terms of constitutional law by claiming that "[t]he Fourteenth Amendment of the United States Constitution[] requires the prosecution to prove every element of a crime beyond a reasonable doubt." OB 40 (quoting Motion for Relief from

Judgment, RE 21-10, PageID.1020). While *Alleyne* concerned a federal defendant and therefore relied on the due process clause of the Fifth Amendment, s*ee Alleyne*, 570 U.S. at 104, Mr. Kares is a state defendant whose due process right to proof beyond a reasonable doubt derives from the Fourteenth Amendment. Mr. Kares therefore phrased his claim in terms of the relevant constitutional law.

Finally, Mr. Kares alleged facts within the mainstream of federal constitutional law. OB 41. *Alleyne* was decided in 2013. It was the last in a line of Supreme Court cases, spanning back to *Apprendi v. New Jersey*, 530 U.S. 466 (2000), concerning which factual determinations need to be made by juries. In July 2015, the Supreme Court of Michigan considered *Alleyne* and held that the process through which Mr. Kares was sentenced was unconstitutional. *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015). It noted in that opinion that "many cases [] have been held in abeyance for this one," and its opinion included a full section entitled "Application to Other Defendants," which gave the lower courts extensive guidance on how to dispose of the "many" pending *Alleyne* claims. *Id.* at 522.

It was against this backdrop that Mr. Kares filed his Rule 6.500 motion on September 26, 2015. By that point, *Alleyne* had been the law for more than two years, *Apprendi* had been the law for more than a decade, and the Michigan courts were in the process of working their way through a substantial backlog of *Alleyne* claims. The fact patterns which gave rise to *Alleyne* claims were familiar to the Michigan courts, so Mr. Kares's complaint that he had been sentenced based on a judge's finding that he engaged in conduct no jury had convicted him of was enough to put the Michigan trial court on notice of the *Alleyne* issue.

Under any reasonable reading, Mr. Kares's Rule 6.500 motion fairly presented his *Alleyne* claim as to Offense Variable 11: he cited a relevant federal case and a state case mentioning *Alleyne* as the source of the relevant rule of federal law, he appealed explicitly to the Fourteenth Amendment's due process clause, and he alleged facts that were within the mainstream of federal constitutional law. Especially given that the district court was obliged to liberally construe Mr. Kares's *pro se* filings, OB 41-42, it should have held that he had fairly presented his *Alleyne* claim in his Rule 6.500 motion.

\* \* \*

But for the trial judge's impermissible findings of fact, Michigan's then-mandatory sentencing guidelines would have required the judge to set Mr. Kares's parole eligibility date between five and nineteen years earlier than his current eligibility date. Because Mr. Kares did not procedurally default his *Alleyne* claim, he is entitled to relief from this unconstitutional sentence.

## CONCLUSION

For the foregoing reasons, this Court should reverse the judgment of the district court, conditionally grant Mr. Kares's petition for a writ of habeas corpus, and remand to the district court with instructions to remand to the state sentencing court for sentencing proceedings consistent with its opinion and the Constitution of the United States. Conditioning the writ on resentencing is the appropriate remedy for *Alleyne* violations. *See Robinson v. Woods*, 901 F.3d 710, 718 (6th Cir. 2018); *Chase v. MaCauley*, 971 F.3d 582, 596 (6th Cir. 2020).

Dated: September 20, 2023        Respectfully submitted,

                                  */s/ Brendan Bernicker*
                                  _____

Easha Anand                       Brendan Bernicker
RODERICK & SOLANGE                RODERICK & SOLANGE MACARTHUR
MACARTHUR JUSTICE CENTER          JUSTICE CENTER
2443 Fillmore St., #380-15875     501 H Street NE, Suite 275
San Francisco, CA 94115          Washington, DC 20002
                                  (202) 869-4324
                                  brendan.bernicker@macarthurjustice.org

*Counsel for Petitioner-Appellant Stephen John Kares*

16

# CERTIFICATE OF COMPLIANCE

1.    This petition complies with the type-volume limitation of Rule 40(b)(1) of the Federal Rules of Appellate Procedure because, according to the word count function of Microsoft Word 2019, the petition contains 3,037 words excluding the parts of the petition exempted by Rule 32(f) of the Federal Rules of Appellate Procedure.

2.    This petition complies with the typeface and type style requirements of Rule 32(a)(5) and (6) of the Federal Rules of Appellate Procedure and Circuit Rule 32(b) because this petition has been prepared in a proportionally spaced typeface using Microsoft Word 2019 in 14-point Century Schoolbook font for the main text and 14-point Century Schoolbook font for footnotes.

Dated: September 20, 2023                    */s/ Brendan Bernicker*

## CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2023, I electronically filed the foregoing document through the court's electronic filing system, and that it has been served on all counsel of record through the court's electronic filing system.

*/s/ Brendan Bernicker*